UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAPRIOLA CORP., and LASER
PEGS VENTURES, LLC,

    Plaintiffs,

v.                                                 CASE NO. 8:12-cv-2346-T-23TBM

LaROSE INDUSTRIES, LLC, and
LARRY ROSEN,

    Defendants.
_____/

**ORDER**

    LaRose Industries, LLC, and Larry Rosen move (Doc. 39) to stay this patent infringement action pending the United States Patent and Trademark Office's (PTO) resolution of an *inter partes* patent review, initiated under the recently effective America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011). By the *inter partes* review, the defendants seek to invalidate U.S. Patent No. 7,731,558, the alleged infringement of which prompts this action by the plaintiffs.

    The defendants argue that *inter partes* review under the AIA will "provide valuable expertise" to the resolution or clarification of patent issues important to, or dispositive of, this action and that, unlike the practice under the former regime of

patent re-examination, *inter partes* review must occur within one-year (extendable to eighteen months for "good cause"). The defendants emphasize that a "liberal policy" favors a stay of litigation in deference to a party's timely resort to available assistance from the PTO.

The defendants argue that any delay attributable to a stay and to the consequent *inter partes* review is compensated fully by an enhanced probability of the eventual judgment's "correctness and finality." The defendants cite the "concrete, numerous, and well-recognized" benefits of resort to the PTO, including "(1) furthering judicial economy; (2) determining validity; (3) focusing the issues, defenses, and evidence; (4) developing the prior art and prosecution history; (5) obtaining the PTO's particular expertise; (6) encouraging settlement; and (7) reducing costs to the parties." *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Texas 2006). The defendants argue that the aggregate benefit of *inter partes* review exceeds the aggregate detriment.

Anticipating argument by the plaintiffs, the defendants concede that the adversaries in this action are direct competitors, each selling a version of the challenged device, often to the same distributors, who sometimes buy from one to the exclusion of the other. The defendants claim this competitive damage, if incurred and proven by the plaintiffs, is readily compensable by money damages and is not the sort of irremediable damage that establishes "prejudice."

Although acknowledging the inherent power to stay litigation pending an *inter partes* review by the PTO, the plaintiffs correctly note that no obligation to stay accompanies an *inter partes* review. Somewhat pessimistically, the plaintiffs declare that the decision to stay requires a "balance of the injustices." In turn, this balance is informed by an assessment of any "undue prejudice or tactical disadvantage," any simplification or streamlining of the trial, and any reduction of "the burden of litigation" on the participants or the court. The plaintiffs undertake to state in the present circumstance a "clear case of hardship or inequity." The plaintiffs note that in the motion to stay the defendants claim no hardship. In contrast, the plaintiffs claim that a stay visits on the plaintiffs a singular and disproportionate burden, a "clear tactical disadvantage."

The plaintiffs illustrate the claimed disadvantage first by noting that the parties directly compete and that the defendants offer no withdrawal of the allegedly infringing device from the market during the term of a stay. The plaintiffs claim loss of market share, customer confusion and loss of good will, and the unsuitability of money damages to compensate the loss. Also, plaintiffs note that the applicable statute provides the plaintiffs three months to respond to the request for *inter partes* review (presumably these plaintiffs would respond more promptly) and provides the PTO three months to decide whether to grant review. The plaintiffs fear that "*inter partes* review could possibly last many years." The parties argue back and forth

inconclusively about the meaning of the plaintiffs' forbearing to move for preliminary injunction, and the plaintiffs argue that the timing of the request for *inter partes* review and the motion for stay reveals the defendants' search for an "inappropriate tactical advantage."  In sum, the parties launch the usual array of accusations and counter-accusations drawn from the list of issues typically pertinent to the utility of a stay pending action by the PTO.  Each party lands a few punches but neither scores a knockdown.

Of course, as the plaintiffs state, the standard for the PTO's granting an *inter partes* review under AIA is higher than the standard for the former re-examination:

> The prior standard for granting a request for *inter partes* reexamination required a showing of a substantial new question of patentability affecting any claim the patent raised by the request.  The standard for granting a request for *inter partes* review requires an elevated showing that there is "a reasonable likelihood that the petitioner would prevail as to at least one of the claims challenged."  35 U.S.C. § 314(a).  Thus, the rate at which the PTAB will grant the *inter partes* review is likely lower.  Indeed, according to the USPTO's Process Production Report, as of the time of filing this motion, out of 122 requests for review that have been filed, only five have been granted.

(Doc. 42 at 16).  In sum, the likelihood of *inter partes* review appears lower than the earlier likelihood of re-examination but the statutory arrangement promises an expeditious response from PTO on whether to conduct *inter partes* review.  In other words, if the PTO declines *inter partes* review, little time is lost, but if PTO grants *inter partes* review, the promise is greater for an important contribution by the PTO to resolution of the governing issues in the litigation.

Finally, judging from the earlier signs, the parties appear poised for a lengthy, highly energized, rancorous, expensive, and enervating dispute, in which neither side will ask or grant respite. The plaintiffs' first wave (a tsunami, in effect) of discovery demands and the defendants' defiant response, along with the parties' accusations and counter-accusations, signal to the experienced, neutral observer the scope and nature of the litigation each party plans (although the parties should assume that the court will not countenance a plan to oppress the opponent – and will intervene decisively, if necessary).

## **CONCLUSION**

Once again commercial interests clash over the scope of a patent. In this instance, the patent claims a child's toy, apparently an enchanting and successful toy. The defendants ask to defer the litigation pending an *inter partes* review by the PTO under a recent amendment to the patent statute. The plaintiffs request "full speed ahead" in the litigation. Because the litigation, although in the incipient stage, promises an abundance of venom and the attendant delay and expense in all events; because the PTO apparently will not consume much time unless the PTO perceives an important patent issue within the PTO's particular expertise; and because an important issue that appears in the litigation also appears to fall within the PTO's province and particular expertise, prudence commends resort to a stay until either the PTO declines review or, finding an important issue within the PTO's special

province, the PTO grants and completes review to the benefit of the parties, the court, and the public. In other words, the investment of some time at this juncture appears wise.

The defendants' motion (Doc. 39) is **GRANTED**, and the action is **STAYED** pending the defendants' two requests for *inter partes* review of the '558 patent by the PTO. The Clerk is directed to administratively close the case pending further order.

ORDERED in Tampa, Florida, on March 11, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE